No. 18-4137

# In The United States Court of Appeals
# For the Sixth Circuit

BLOCK COMMUNICATIONS, INC., *et al.*,

Petitioners,

v.

THE FEDERAL COMMUNICATIONS COMMISSION, *et al.*,

Respondents.

On Petition for Review of an Order
of the Federal Communications Commission

**REPLY OF PETITIONERS
BLOCK COMMUNICATIONS, INC., LIMA
COMMUNICATIONS CORPORATION, AND WEST
CENTRAL OHIO BROADCASTING, INC.**

Keith Wilkowski, Esq.
Block Communications, Inc.
405 Madison Avenue, Suite 2100
Toledo, OH 43604
Phone: (419) 724-7276
Fax: (419) 724-6167
kwilkowski@blockcommunications.com

Edward A. Yorkgitis, Jr., Esq.
Kelley Drye & Warren LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
Phone: (202) 342-8400
Fax: (202) 342-8451
cyorkgitis@kelleydrye.com

*Counsel for Petitioners*

May 13, 2019

# TABLE OF CONTENTS

**Page**

I.    BLOCK HAS STANDING TO BRING THIS ACTION ..............................1

II.    THE FCC MISAPPLIED THE STATUTORY AND NON-
STATUTORY FACTORS ............................................................................8

    A.    The FCC Should Have Considered and Assigned Weight to
Block's Economic Expectations..........................................................10

    B.    The FCC Erred When Applying the Statutory Factors ......................14

        1.    The FCC Ignored the Lack of Historical Carriage as to
Most of the Auglaize Communities .........................................14

        2.    The Government Acknowledges That the FCC Failed to
Consider the Local Service and Viewing Patterns Factors
on a Community-by-Community Basis ....................................16

        3.    Block Is Not Barred from Showing That the In-State
Factor Is Inapplicable...............................................................19

III.    THE GOVERNMENT AND COX MISCHARACTERIZE BLOCK'S
ARGUMENTS IN AN EFFORT TO DIVERT THE COURT'S
ATTENTION..............................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chrysler Group LLC v. Fox Hills Motor Sales, Inc.*,
  776 F.3d 411 (6th Cir. 2015) ........................................................2, 11

*Cincinnati Bell Tel. Co. v. FCC*,
  69 F.3d 752 (6th Cir. 1995) ................................................................15

*Clinton v. City of New York*,
  524 U.S. 417 (1998) .............................................................................3

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..........................................................................1, 8

*RKO General, Inc. v. FCC*,
  670 F.2d 215 (D.C. Cir. 1981) .............................................................9

*Sorenson Comm's, LLC v. FCC*,
  897 F.3d 214 (D.C. Cir 2018) .......................................................2, 4, 8

*Southwestern Pennsylvania Growth Alliance v. Browner*,
  144 F.3d 984 (6th Cir. 1998) .........................................................1, 5, 6

*Tennessee Republican Party v. SEC*,
  863 F.3d 507 (6th Cir. 2017) ................................................................2

*Washington Ass'n for Television & Children v. FCC*,
  712 F.2d 677 (D.C. Cir. 1983) ............................................................21

*WLNY-TV, Inc. v. FCC*,
  163 F.3d 137 (2d Cir. 1998) ...............................................................13

*Worldcall Interconnect, Inc. v. FCC*,
  907 F.3d 810 (5th Cir. 2018) ..............................................................21

**Statutes**

5 U.S.C. § 706 .....................................................................................15

47 U.S.C. § 405(a) .........................................................................20, 21

47 U.S.C. § 534(h)(1)(C) ......................................................................8

47 U.S.C. § 534(h)(1)(C)(ii)(I) ......................................................14, 15

47 U.S.C. § 534(h)(1)(c)(ii)(II) ..............................................................17

47 U.S.C. § 534(h)(1)(c)(ii)(V) ..............................................................17

**Administrative Decisions**

*Broad Street Television, L.P. Davenport, Iowa For Modification of Station KWQC-TV's ADI*, Memorandum Opinion and Order, 10 FCC Rcd 5576 (1995) ..............................................................11

*For Modification of the Portland-Poland Spring, Maine ADI Market*, Memorandum Opinion and Order, 13 FCC Rcd 23470 (CSB, 1998), *affirmed on recon.*, 15 FCC Rcd 10762 (CSB, 2000) .............................11

*For Modification of the Portland-Poland Spring, Maine ADI Market*, Memorandum Opinion and Order, 14 FCC Rcd 4547 (1999) ...........................11

*For Modification of the Topeka, Kansas DMA*, CSR-8121-A, Memorandum Opinion and Order, 24 FCC Rcd 7339 (MB, 2009) ......................................................11

*Implementation of the Cable Television Consumer Protection and Competition Act of 1992 Broadcast Signal Carriage Issues, et al.*, Report and Order, 8 FCC Rcd 2965 (1993) ("*Must Carry Order*") .............14, 18

*Implementation of Section 102 of the STELA Reauthorization Act of 2014*, Report and Order ("*STELAR Report and Order*"), 30 FCC Rcd 10406 (2015) ................................................................17, 19, 21

Petitioners Block Communications, Inc., Lima Communications Corporation and West Central Ohio Broadcasting, Inc. (collectively, "Block") submit the following reply to the briefs of Respondents Federal Communications Commission ("FCC" or "Commission") and United States of America (collectively the "Government") ("Gov't Br.") and Intervenors Miami Valley Broadcasting Corporation and Cox Media Group, LLC (collectively "Cox") ("Cox Br.") in opposition to the opening Brief of Petitioners ("Block Br.").

## I.   BLOCK HAS STANDING TO BRING THIS ACTION

Block has standing to bring its Petition because the Commission's action, by affirming the Media Bureau's ("Bureau") order granting Cox's petition for market modification, conferred a benefit on Block's competitor that altered the competitive balance between Block and Cox and placed Block at a comparative disadvantage as a result. *See Southwestern Pennsylvania Growth Alliance v. Browner*, 144 F.3d 984 (6th Cir. 1998) (comparative "economic disadvantage" to competitors as a result of agency decision satisfies injury-in-fact for standing purposes).[1] This altering of the competitive *status quo* by the Bureau, which the FCC's *Order* affirmed, constitutes injury-in-fact to Block. *Id.* Based on the record

---

[1] To establish standing, and to ensure the presence of a "case" or "controversy," under Article III of the Constitution, a plaintiff must allege "(1) an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992) (citing *Allen v. Wright*, 468 U. S. 737, 751 (1984)).

below and specifically the facts recounted in Block's opening brief, Block's standing was self-evident and, contrary to the Government's claim, Gov't Br. at 19, does not require a special demonstration. *See Tennessee Republican Party v. SEC*, 863 F.3d 507, 517 (6th Cir. 2017) (where standing in an agency appeal is "self-evident," a party is not required to attach "affidavits or other evidence" to its opening brief).

The Government contends that Block lacks standing on the sole ground that it allegedly has not suffered injury-in-fact as a result of the Bureau and FCC decisions. Gov't Br. at 19-21. To establish injury-in-fact for standing purposes, this Court recognizes that Article III requires nothing more than "probable economic injury," which occurs when governmental actions "alter competitive conditions." *Chrysler Group LLC v. Fox Hills Motor Sales, Inc*. 776 F.3d 411, 431 (6th Cir. 2015) (citing *Clinton v. City of New York*, 524 U.S. 417 (1998)). Under the competitor standing doctrine, economic actors "'suffer [an] injury in fact when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition' against them." *Sorenson Comm's, LLC v. FCC*, 897 F.3d 214, 226 (D.C. Cir 2018) (citing *Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010)). Because "increased competition almost surely injures economic actors," they "need not wait" until they are competitively hurt "before challenging the regulatory ... governmental decision that increases competition." *Id*. Further, "[i]t

follows logically that any … petitioner who is likely to suffer economic injury as a result of governmental action that changes market conditions satisfies this part of the standing test." *Clinton*, 524 U.S. at 433 (citation omitted).

Here, Block's injury-in-fact is both self-evident and established by the facts set forth in the record and recounted in Block's opening brief. As explained in Block's opening brief, Block's CBS affiliate station ("WOHL-CD") and Cox's CBS affiliate station ("WHIO") are competitors that both seek to be carried by cable systems in the Lima DMA. *See* Block Br. at 15-18 (citing [PA0009, PA0051, PA0742, PA0832]), 20-21 (citing [PA0385-86, PA0394, PA0396]). Prior to the Bureau's 2013 decision, which the FCC affirmed in its *Order*, WOHL-CD and WHIO competed on relatively equal footing when the Auglaize Communities were part of the Lima DMA, which occurred in eight of the twelve years prior to the decision (and in each of the six years since),[2] in that neither station had the ability to *compel* cable systems in the Lima DMA to carry their broadcast through the exercise of must carry rights. *See* Block Br. at 35 (citing [PA0775-76]). Instead, both stations negotiated retransmission agreements with those cable systems to obtain carriage rights. *Id.* Fearing the reassignment of the Auglaize Communities back to the Lima DMA under the normal operation of the statutory

---

[2] Nielsen has assigned Auglaize County to the Lima DMA in every year from 2013-14 through 2018-19. The assignments for 2019-2020 have not yet been made.

framework, Cox filed its petition to upend permanently the *status quo* dictated by the assignment mechanism based on Nielsen ratings. *See* Gov't Br. at 5-6 (anticipating a change in the DMA lines, Cox filed peremptorily to include the Auglaize communities in the WHIO market "regardless" of the operation of the statutory process based on Nielsen ratings.)

The FCC's *Order* affirmed the meaningful change in this *status quo* caused by the Bureau's decision, to Block's economic and competitive disadvantage. *See* [PA0828-36]. Specifically, the Bureau's decision modified WHIO's market to include the Auglaize Communities even when they are in the Lima DMA, setting the stage for Block to be "competitively hurt" as a result of the agency's actions. *See Sorenson Comm's,* 897 F.3d at 226. By permanently adding the Auglaize Communities to WHIO's market, the FCC enabled WHIO to exercise must carry rights when those communities fall within the Lima DMA which has been the case since the Bureau's decision, whereas previously it could not. This change constitutes injury to Block because it competes with WHIO for carriage in the Auglaize Communities.

Intervenor Cox's Brief highlights a second significant economic and competitive benefit relative to Block that the Bureau decision conferred on Cox and the subsequent FCC *Order* preserved. In addition to providing WHIO with must carry rights that it previously did not have, these actions strengthen WHIO's

ability to negotiate favorable retransmission consent agreements by reducing the copyright fees cable systems must pay for retransmitting WHIO's broadcast in the Auglaize Communities. *See* Cox Br. at 1, 9 n. 3 (citing 17 U.S.C. § 111(f)(5)(B)(iv)). Conferral of this extra competitive advantage on Cox relative to Block underscores the injury-in-fact to Block caused by the Commission's actions.

This Court's decision in *Southwestern Pennsylvania* is particularly instructive. In that case, a coalition of manufacturers and local governments in southwestern Pennsylvania alleged that the EPA had incorrectly redesignated a neighboring Ohio area as an "attainment" area for purposes of ozone controls. *Southwestern Pennsylvania*, 144 F.3d at 988. As a result, businesses in the Ohio area would pay less for ozone controls, whereas competitor businesses in the southwestern Pennsylvania area, which remained a "nonattainment" area, would continue to have to pay higher ozone control costs. *Id.* The Court found that the "economic disadvantage" the southwestern Pennsylvania businesses would suffer – as compared to businesses in Ohio – was sufficient injury-in-fact to establish standing. *Id.*

Like the plaintiffs in *Southwestern Pennsylvania*, Block has suffered comparative economic disadvantage relative to Cox. As a result of the Bureau and FCC's unjustified market modification decisions, Cox: (1) has the ability to exercise must carry rights in the Auglaize Communities when they are part of the

Lima DMA; and (2) can negotiate more favorable retransmission consent agreements with cable operators who now pay lower copyright fees to retransmit its broadcast. Before the FCC's decision, Cox did not enjoy either of these benefits. As in all competitive matters, one competitor's advantage becomes the other's disadvantage. Under *Southwestern Pennsylvania*, Block's economic disadvantage at the hands of the Commission's *Order* affirming the Bureau's decision satisfies the injury-in-fact requirement. *Id.*

Injury to show standing is sufficient when the competitive risks to a petitioner are increased by the agency's action, even if other risks are already present. *Id.* Accordingly, the Government's argument that Block's injuries are "speculative" because Block – not having must carry rights of its own – was "always at risk" that cable carriers might drop WOHL-CD's programming, "for whatever reason," is irrelevant. Gov't Br. at 20. The economic reality is that, post-Bureau decision, Block's risk of being dropped by a cable system in one or more of the Auglaize Communities – or merely negotiating a less-advantageous retransmission agreement – was necessarily *increased* when Cox gained the right to compel cable systems in the Auglaize Communities to carry it.

*Within Block's home market* – the Lima DMA – WHIO had *never* held must carry rights prior to the FCC's *Order*. Consequently, the FCC's argument that Block did not suffer adequate injury-in-fact because WHIO held must carry rights

6

in Auglaize County in previous years when Nielsen assigned Auglaize County to the Dayton DMA, WHIO's home market, was beside the point. Gov't Br. at 20.[3] These fluctuations occurred as a result of the statute's provisions that dictated stations' markets through use of the Nielsen ratings. By the Commission's actions, which have permanent effect unless vacated or rescinded, the statute's primary means of determining television station's markets through Nielsen ratings is no longer relevant to the question of whether the Auglaize Communities are within WHIO's market.

Finally, Block need not be dropped by any of the Auglaize Communities' cable systems to be injured for standing purposes. Consequently, the Government's observation that, since the agency's market modification decisions, cable systems in Auglaize County have continued to carry Block's programming, is simply beside the point. *See* Gov't Br. at 21. Block is sufficiently injured by the FCC's unjustified grant of a competitive advantage on its competitor and "need not wait" until that competitive advantage causes demonstrable monetary losses "before challenging the regulatory ... governmental decision that increases competition," because "increased competition almost surely injures economic

---

[3] The Government's argument also fails to account for Block's competitive disadvantage resulting from Cox's ability, resulting from the Commission's actions, to negotiate more favorable retransmission consent agreements with local cable systems due to reduced copyright fees.

actors." *Sorenson Comm's*, 897 F.3d at 226. For similar reasons, Cox is wrong that the economic advantage that Cox now possesses – and the corresponding disadvantage to Block – is "speculative." *See* Cox Br. at 1, 9 n. 3.

Because Block has suffered injury-in-fact that resulted from the FCC's Order, and because that injury is redressable by this Court, Block has established standing. *Lujan*, 504 U.S. at 590.

## II. THE FCC MISAPPLIED THE STATUTORY AND NON-STATUTORY FACTORS

As Block explained in its opening brief, in granting Cox's market modification request, the FCC abandoned its overarching statutory obligation to "afford particular attention to the value of localism," 47 U.S.C. § 534(h)(1)(C), by woodenly applying the relevant factors that Congress directed the FCC to consider, and treating its analysis as a box-checking exercise, rather than considering whether its interpretation and application of the statutory factors and other considerations on the whole would advance the value of localism. Block Br. at 28-32.

In its brief, the Government acknowledges that the FCC's decision was based on the totality of the five statutory factors. Gov't Br. at 22-23. The Commission accorded no weight, because it erroneously declined to even consider, the extra-statutory Economic Expectations Factor it had considered in other market

modification cases and found that the fourth statutory factor ("Other Stations' Programming Factor") was neutral. *Id.* at 22. Although the FCC found that the four remaining statutory factors weighed in favor of Cox, aside from noting that it would have reached the same conclusion if it had not considered the third ("In-State") statutory factor, it did not articulate the sufficiency of its findings to merit market modification except by taking the weight of the factors together as a whole. Gov't Br. at 26.

Accordingly, if this Court finds that the FCC erred in applying any one or more of the first ("Historical Carriage"), second ("Local Service") or fifth ("Viewing Patterns") statutory factors, or the Economic Expectations Factor – or finds that the Commission's decision on any of these factors was not adequately explained – then the Court should vacate and/or remand the FCC's decision because the FCC decision is unclear whether it would have decided in the same fashion in the absence of the factor's relative weight. *See RKO General, Inc. v. FCC*, 670 F.2d 215 n.20, (D.C. Cir. 1981) (where Commission does not articulate the "relative weight" of "the factors that affect its decision," remand is appropriate when the Court of Appeals finds error with respect to one of those factors) (citing *Leflore Broadcasting Co. v. FCC*, 636 F.2d 454, 463 (D.C. Cir. 1980) and *United States v. Third National Bank*, 390 U.S. 171, 183 (1968)).

**A.** **The FCC Should Have Considered and Assigned Weight to Block's Economic Expectations**

In its opening brief, Block explained how it presented significant evidence to the Bureau and the Commission – which they both summarily and improperly disregarded – demonstrating how modifying the market definition to include the Auglaize Communities within WHIO's market undermined Block's economic expectations for its network affiliation agreement with CBS. Block Br. at 34-40. In response, the Government and Cox both make the circular argument that Block could not have had any legitimate economic expectations that were impacted by the FCC's decision because the very *existence* of the market modification process meant that Block should have expected that another CBS broadcaster might seek and obtain must carry rights on the cable systems in the Auglaize Communities. FCC Opp. at 24-25 ("Block's economic expectations cannot immunize it from the possibility that other stations may obtain must-carry rights by availing themselves of the statute's market-modification process."); Cox Br. at 5-6 ("For Block to harbor the 'expectation' that no CBS affiliated station – and particularly WHIO – might ever seek to add to its market communities in Auglaize County, is to ignore the very existence of the Market Modification Provision."). This argument, however, if accepted by this Court, would wholly eviscerate the Economic

Expectations Factor, which the Commission has applied on numerous occasions and has not indicated in this matter that it is a factor it intends to abandon.

Both the Government and Cox effectively ask this Court to overlook that the FCC routinely considers the economic expectations of in-market stations that compete against out-of-market petitioners for market modification, and consistently *denies* such modification petitions where granting the petition would undermine the economic expectations underlying the in-market station's network affiliation agreement.[4] As the Commission even recognized in its own decision below, "the degree to which a proposed modification would 'unduly upset … economic marketplace expectations'" is a relevant factor for consideration in a

---

[4] *See Free State Communications, LLC; For Modification of the Topeka, Kansas DMA,* CSR-8121-A, Memorandum Opinion and Order, 24 FCC Rcd 7339, ¶ 25 (MB, 2009) (declining to modify market "because addition of the requested communities would violate the economic marketplace expectations underlying the affiliation concept"); *Guy Gannett Communications, Inc.; For Modification of the Portland-Poland Spring, Maine ADI Market*, Memorandum Opinion and Order, 13 FCC Rcd 23470, ¶¶ 22, 25 (CSB, 1998) (declining to modify market where grant would jeopardize an in-market CBS affiliate's carriage), *affirmed on recon.*, 15 FCC Rcd 10762, ¶ 13 (CSB, 2000) ("In any instance where a network affiliate attempts to encroach into another market the potential effect can be severe and must be taken into account"); *Broad Street Television, L.P. Davenport, Iowa For Modification of Station KWQC-TV's ADI* , Memorandum Opinion and Order, 10 FCC Rcd 5576 (1995) (declining to modify market when doing so would jeopardize carriage of the in-market affiliate); *Harron Communications Corp.; For Modification of the Portland-Poland Spring, Maine ADI Market*, Memorandum Opinion and Order, 14 FCC Rcd 4547, ¶ 28 (1999) (declining to modify market given in-market affiliate's viewership in the cable communities to avoid interference with "present affiliate relationship").

market modification proceeding. *Order*, ¶ 18 (citing *Free State*, 24 FCC Rcd 7339, ¶ 22). Under the dubious and contrary theory now advanced by the Government and Cox, an in-market station's economic expectations could never be a factor in the market modification analysis. Hence, these arguments by the Government and Cox seeking to justify the Commission's failure to take into account Block's economic expectations should be summarily rejected.

The absurdity of the Commission's and Cox's argument aside, Block explained in its opening brief that the FCC entirely misapprehended the nature of Block's economic expectations, and incorrectly regarded them as an expectation that Cox's CBS affiliate would never have the ability to exercise must carry rights in Auglaize County regardless of the scope of the Lima and Dayton DMAs. Block Br. at 36-37. Instead, Block's actual economic expectation, based on its previous twelve years of experience (nineteen, as of the date of the Petition for Review), was that it would continue to compete on equal footing with other CBS affiliates in *the Lima DMA*. *Id.* Only by ignoring this central tenet of Block's position, and the facts regarding the scope of the Lima DMA, does the Government brush aside Block's economic expectations without considering the evidence presented. In its opposition brief, the Government fails to respond to this distinction at all, and simply restates the faulty rationale presented in its *Order* below. Gov't Br. at 24-25. Block does not ask this Court to substitute its judgment for that of the agency,

as the Government suggests, *see* Gov't Br. at 23, but to have the agency *consider, for the first time,* the evidence presented to it about Block's reasonable economic expectations, rather than to brush it aside summarily contrary to the Commission's own practice.

In addition, Cox egregiously mischaracterizes the Second Circuit's decision in *WLNY-TV, Inc. v. FCC*, 163 F.3d 137 (2d Cir. 1998), as holding that the FCC may only consider non-statutory market modification factors – such as economic expectations – if the FCC first determines that market modification is *not* warranted under the statutory factors, and may only do so to the extent those factors would *support* market modification.  Cox Br. at 13-14 (citing *WLNY*, 163 F.3d at 143).  But the *WLNY* court did not say that the FCC must end its inquiry and grant a market modification request if the statutory factors weigh in favor of market modification without considering evidence of another station's economic expectations – which is what the FCC did here.  Indeed, the *WLNY* court did not address this issue.  Nor has the FCC ever interpreted the statute in that manner. *See* n. 4, *infra*.

Accordingly, the Commission erred by failing to consider the effect of the market modification on Block's economic expectations, which warrants that the Court vacate the *Order* and remand to the Commission to take Block's economic expectations into account.

### B. The FCC Erred When Applying the Statutory Factors

##### 1. The FCC Ignored the Lack of Historical Carriage as to Most of the Auglaize Communities

In its opening brief, Block explained that the FCC erred in applying the Historical Carriage factor[5] because there was no evidence of *any* historical carriage in nine out of the twenty-three communities in Auglaize County, and evidence of only four years of carriage in four of the other communities. Block Br. at 43-48. As Block noted, the Historical Carriage factor must be applied to each of the communities individually, not to the county as a whole. Block Br. at 29; *see, e.g., Implementation of the Cable Television Consumer Protection and Competition Act of 1992 Broadcast Signal Carriage Issues, et al.,* Report and Order, 8 FCC Rcd 2965 (1993) *("Must Carry Order")* (cited by *Bureau Order* ¶ 4 [PA0737]). In response, the Government simply notes that Block "does not dispute" that WHIO "was carried in all of the Auglaize Communities *at the time Cox filed its petition*." Gov't Br. at 29 (emphasis supplied).[6] But WHIO's carriage *at the time Cox filed*

---

[5] Under the Historical Carriage factor, the FCC is to take into account:

> whether the station, or other stations located in the same area, have been historically carried on the cable system or systems within such community or on the satellite carrier or carriers serving such community.

47 U.S.C. § 534(h)(1)(C)(ii)(I).

[6] The Government mistakenly asserts in its brief that WHIO was carried in all of the Auglaize Communities as of 2012. Gov't Br. at 10. To the contrary, the record

*its petition*, standing alone, is irrelevant for purposes of the Historical Carriage factor, which requires the Commission to consider whether WHIO "[has] been *historically* carried on the cable system or systems within such community[.]"  47 U.S.C. § 534(h)(1)(C)(ii)(I) (emphasis added).  "Historical" implies carriage for some length of time *in the past* as of the time of the Petition.  The Government's suggestion that the Historical Carriage factor may be satisfied where there is no evidence in the record – as was the case here for nine of the relevant communities – that a station was carried in the relevant community for *any* period of time before the date of its petition for market modification is clearly contrary to the statute. *See* 5 U.S.C. § 706 (a court may "hold unlawful and set aside" agency "findings and conclusions" that are "not in accordance with law.")

Second, the FCC suggests that the lack of evidence supporting its conclusion on the Historical Carriage factor is somehow mitigated by the Commission's finding that "the entire County has been assigned to WHIO's Dayton DMA for the vast majority of the past half century."  Gov't Br. at 29.  But Auglaize County's past DMA *assignments* shed no light at all on whether WHIO has been *carried on cable systems* located in each of the Auglaize Communities, which is the sole inquiry under the Historical Carriage factor.  By basing its decision on this *non*

---

only establishes that WHIO was carried in all of the Auglaize Communities as of the date of Cox's Petition in July 2013.  *See* Bureau Order, ¶ 10 [PA0742].

*sequitur*, the FCC has failed to supply "a reasoned basis for its decision," which is grounds for setting aside the agency's action. *Cincinnati Bell Tel. Co. v. FCC*, 69 F.3d 752, 764 (6th Cir. 1995) (finding the FCC acted arbitrarily by failing to provide a reasoned explanation for its adoption of rules restricting cellular eligibility rules).

As the Petitioner, Cox had the burden to provide such evidence and it failed to do so. That failure is nearly inexplicable as the relevant facts by their nature would have been within its possession. That failure cannot be forgiven after-the-fact because of the existence of out-of-scope facts irrelevant to the question at hand.

Accordingly, the FCC's decision with respect to the Historical Carriage Factor cannot stand.

### 2. The Government Acknowledges That the FCC Failed to Consider the Local Service and Viewing Patterns Factors on a Community-by-Community Basis

In its opening brief, Block explained how the Commission misapplied the second and fifth statutory factors (the "Local Service Factor" and "Viewing Patterns Factor," respectively) because the FCC failed to consider how those factors applied to *each* of the twenty-three communities within Auglaize County, and instead applied the factor to the county as a whole. Block Br. at 48-51.

As Block explained in its opening brief, each of the factors which existed prior to the STELAR Act which added a fifth factor is stated in terms of application on a community basis. Block Br. at 29. The FCC has long recognized that the statute mandates that its analysis be done on a community-by-community, and not county-wide, basis. *See Bureau Order* ¶ 4 [PA0737] (citing *Must Carry Order*, n.139); *see also Amendment to the Commission's Rules Concerning Market Modification; Implementation of Section 102 of the STELA Reauthorization Act of 2014,* Report and Order, 30 FCC Rcd 10406 ¶ 55 (2015) ("*STELAR Report and Order*") ("In the cable carriage context, the Commission considers market modification requests on a community-by-community basis and defines a community unit in terms of a 'distinct community or municipal entity' where a cable system operates or will operate."). Further, the statute itself only permits the Commission to "include additional *communities*" – not counties – within a petitioning broadcasting station's television market, and in considering such a request must take into account:

- Local Service Factor: "whether the television station provides coverage or other local service *to such community*." 47 U.S.C. § 534(h)(1)(c)(ii)(II);

- Viewing Patterns Factor: "evidence of viewing patterns in households that subscribe and do not subscribe to the services offered by multichannel video programming distributors within the areas served by such multichannel

17

video programming distributors *in such community*." 47 U.S.C. § 534(h)(1)(c)(ii)(V);

In its brief, the Government does not dispute that it failed to consider the Local Service and Viewing Patterns Factors on a community-by-community basis. Gov't Br. at 30-31. Instead, citing the *Must Carry Order*, the Government argues that it may consider *county-wide* evidence as support for a change in a station's market to include a particular community. *Id.* at 30 (citing *Must Carry Order*, ¶ 47).

Not only does the *Must Carry Order* fail to support the Government's actions, that order expressly *contradicts* them. In Paragraph 47 of the *Must Carry Order*, cited by the Government, the Commission states that it will not "restrict the types of evidence that parties can submit to demonstrate the propriety of changing a station's must-carry market" under the market modification provisions of the statute. *Id.* But the Commission proceeds to make clear, in the same paragraph, that it requires community-level – and not county-wide – evidence for each factor. *Id.* Specifically, with respect to the Viewing Patterns Factor, the Commission stated:

> The final factor concerns viewing patterns in the cable community in cable and noncable homes. Audience data clearly provide appropriate evidence about this factor. In this regard, we note that surveys such as those used to demonstrate significantly viewed status could be useful. However, since *this factor requires us to evaluate viewing on*

*a community basis for cable and noncable homes*, and significantly viewed surveys typically measure viewing only in noncable households, such surveys may need to be supplemented with additional data concerning viewing in cable homes.

*Id* (emphasis added).

Because the Government plainly failed to apply the Local Service and Viewing Patterns factors on a community-by-community basis, as required by statute and the FCC's own implementing order and rules, it erred in weighing those factors in favor of Cox and the *Order* should be vacated and remanded.

### 3. Block Is Not Barred from Showing That the In-State Factor Is Inapplicable

In its opening brief, Block explained that the FCC failed to abide by its own rules in finding that the third statutory factor weighed in favor of granting Cox's petition. Block Br. at 40-42 (citing 47 U.S.C. § 534(h)(1)(c)(ii)(III) (the "In-State Factor")). This factor requires the FCC to consider "whether modifying the market of the television station would promote consumers' access to television broadcast station signals that originate in their State of residence." *Id.* Notably, the FCC's order implementing the In-State Factor, use of that factor is narrowed; the FCC found that the factor is "inapplicable" if market modification "would not result in increased consumer access to an in-state station's programming." *STELAR Report and Order*, FCC Rcd, ¶ 19. Here, market modification does not result in any such increased consumer access, rendering the In-State Factor is inapplicable.

Specifically,: (1) the WHIO broadcast signal already reaches each of the Auglaize Communities; and (2) WHIO was already carried on the cable systems in each of the Auglaize Communities at the time the Cox Petition was decided by the Bureau. Block Br. at 42.

In its response, the Government does not disagree with Block's assessment. Moreover, it does not even address the rule cited by Block. Gov't Br. at 26-28. Instead, the Government argues that Block is "barred" from raising this argument under 47 U.S.C. § 405(a) "because Block never presented it to the Commission" in a petition for reconsideration of the *Order*. Gov't Br. at 28. The Government is wrong in asserting Block is barred. Under Section 405(a), the filing of a petition for reconsideration is a "condition precedent to judicial review" of an FCC order only when the party seeking review "relies on questions of fact or law upon which the Commission, or designated authority within the Commission, has been afforded no opportunity to pass." 47 U.S.C. § 405(a). As explained below, the Commission not only had an "opportunity to pass" on the In-State Factor's application under the FCC's implementing order, it raised the issue *sua sponte* and expressly *relied* on its implementing order in making its decision. *See Order*, ¶¶ 14-15.

The In-State Factor was added to the statute after the parties had completed briefing before the Commission on Block's Application for Review, and so the

parties had no occasion to address it in the Application for Review briefing. But the Commission raised the In-State Factor *sua sponte* without asking for such briefing, as it was empowered to do. *Id.* In doing so, the Commission purportedly relied on its rules and implementing order governing application of the In-State Factor set forth in the *STELAR Report and Order*. *Id.*, n. 46 (citing *STELAR Report and Order*, ¶ 20). In its opening brief, Block relied on the same rules and implementing order. *See* Block Br. at 41-42 (citing *STELAR Report and Order*, ¶ 19). Thus, the Commission expressly "pass[ed]" on the same issue – namely, the applicability of the factor. Consequently, Block was not barred from addressing this issue in its brief. 47 U.S.C. § 405(a); *see Washington Ass'n for Television & Children v. FCC*, 712 F.2d 677, 681–82 (D.C. Cir. 1983) ("[I]t is not always necessary for a party to raise an issue, so long as the Commission in fact considered the issue."); *see also, Worldcall Interconnect, Inc. v. FCC*, 907 F.3d 810, 820 (5th Cir. 2018) (Although there was not "exact congruity" between the petitioner's argument before the FCC and its argument on appeal, petitioner's argument was not barred because the Commission "was aware that the issue of the proper interpretation of [the regulatory provision] was before it"). Here, the Commission below squarely wrestled with the proper interpretation and application of the In-State Factor, laying an adequate foundation for this judicial review of its decision.

## III. THE GOVERNMENT AND COX MISCHARACTERIZE BLOCK'S ARGUMENTS IN AN EFFORT TO DIVERT THE COURT'S ATTENTION

In its opening brief, Block explained that the Commission in the *Order* did not afford particular attention to the value of localism when interpreting and applying the factors. Block explained how the Commission's *Order* threatens the continued ability of Block to provide robust local programming to the Auglaize Communities. The *Order* certainly does not and could not serve to increase the sources or the amount of local programming, and *does not purport to do so*, given that WHIO was already carried by the cable operators in the Auglaize Communities.

Both the Government and Cox attempt to misdirect the Court's attention by claiming that Block is asking the Court to perform a comparative analysis between Block's local coverage and service in the Auglaize Communities and that of Cox. *See* Gov't Br. at 32 ("Block's 'real argument' seems to be that the Commission did not engage in a comparative analysis."); Cox Br. at 10 (Block "invites the Court" to "employ[] a comparative analysis of the merits of WHIO's television service versus WOHL's.").

But nowhere in its brief does Block ask the Court to undertake such an analysis. Nor does Block claim that the FCC was required to do so. In its opening brief, Block narrowed the scope of its arguments relative to those in its Application

for Review and substantiated how the record below demonstrated the significant local service and programming that the Auglaize Communities stand to *lose* – with little or no offsetting gains – as a result of the Commission's decision. For that purpose, Block detailed the extensive, and undisputed, evidence before the FCC regarding the local service and programming that Block's WOHL-CD station provided to the Auglaize Communities (as of the time of the Bureau's decision).[7] Block did so, not for purposes of seeking the Court to engage in a comparison between the local programming coverage offered by WOHL-CD and Cox's WHIO, as the Government and Cox would have the Court believe, but to focus the Court's attention on the local programming that stood to be adversely affected if the *Order* is allowed to stand and Cox exercises its must carry rights.

As the FCC admits, promoting the "value of localism" was Congress's "overarching statutory objective" in dictating how the market modification provision was to be interpreted and applied.  Gov't Br. at 32.  Thus, the

---

[7] Cox's suggestion that economic injury to Block's WOHL-CD station would not threaten local programming because WOHL-CD "merely simulcasts the news of Block's other Lima station, WLIO," Cox. Br. at 10, is off the mark.  As Block explained in its opening brief, Block's four channels operate as a single economic unit, which allows Block to offer high-quality local programming on all four channels.  Block Br. at 18 (citing [PA0386, [PA0774]) Revenue generated by the WOHL-CD channel supports Block's ability to provide comprehensive local news, weather, and sports programming on each of its channels.  *Id*.  Conversely, loss of that revenue would undermine the extent of local programming that Block could provide and all of its simulcast channels.  *Id.*

23

Commission should have considered Block's evidence whether that objective was furthered, or frustrated, by granting a market modification request that, if granted, conferred a competitive advantage on Cox that would put at risk Block's ability to continue providing significant local programming. It did not. Nor does the Commission claim that it did.

Finally, Cox suggests that Block claims that the purpose of market modification is to "protect individual stations from competition." Cox Br. at 6. But Block does not make this contention anywhere in its brief. Instead, Block noted that the FCC was required to *take into account* Block's economic expectations in "afford[ing] particular attention to the value of localism" when conferring a competitive advantage on Cox, even if, or especially because, done through the market modification mechanism, which the FCC failed to do. Block Br. at 33-34.[8] Accordingly, this Court should reverse the Commission's decision.

## CONCLUSION

For the foregoing reasons and those set out in the opening Brief of Petitioners, the Court should grant the Petition for Review and hold the *Order* to be unlawful. The Court should vacate, enjoin, and set aside the *Order* and remand to the FCC, with further instructions to the extent appropriate.

---

[8] In addition, Cox incorrectly asserts that Block "impl[ies] that adding the Auglaize Communities to WHIO's market removes them from the Lima DMA," Cox Br. at 6 – another claim that does not appear anywhere in Block's opening brief.

Respectfully submitted:


**Block Communications, Inc.,**
**Lima Communications Corporation and**
**West Central Ohio Broadcasting, Inc.**


*/s/ Edward A. Yorkgitis, Jr.*
Edward A. Yorkgitis, Jr., Esq.
Kelley Drye & Warren LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
Phone:  (202) 342-8400
Fax:  (202) 342-8451
cyorkgitis@kelleydrye.com

Keith Wilkowski, Esq.
Block Communications, Inc.
405 Madison Avenue, Suite 2100
Toledo, OH  43604
Phone:  (419) 724-7276
Fax:  (419) 724-6167
kwilkowski@blockcommunications.com

*Counsel for Petitioners*


Dated:  May 13, 2019

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION AND TYPEFACE AND TYPE STYLE REQUIREMENTS**

Undersigned counsel for Petitioners certifies that this document complies

with:

1.    The type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i)(ii) because, excluding parts listed under Fed. R. App. 32(f) or 6 Cir. 32(b)(1), this document contains 5,692 words.

2.    The typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman.

*/s/ Edward A. Yorkgitis, Jr.*
Edward A. Yorkgitis, Jr., Esq.
Kelley Drye & Warren LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
Phone:  (202) 342-8400
Fax:  (202) 342-8451
cyorkgitis@kelleydrye.com

*Counsel for Petitioners*

Dated:  May 13, 2019

**CERTIFICATE OF FILING AND SERVICE**

      I, Edward A. Yorkgitis, Jr., hereby certify that on May 13, 2019, I caused to be filed the foregoing Reply of Petitioners with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the electronic CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

> */s/ Edward A. Yorkgitis, Jr.*
> Edward A. Yorkgitis, Jr., Esq.
> Kelley Drye & Warren LLP
> 3050 K Street, N.W., Suite 400
> Washington, DC  20007
> Phone:  (202) 342-8400
> Fax:  (202) 342-8451
> cyorkgitis@kelleydrye.com
>
> *Counsel for Petitioners*